Good morning, everyone. We have five cases for oral argument before this panel this morning, and we will start with United States v. Suggs, which is 19-1487. Mr. Hansmeier, you may proceed. Mr. Hansmeier, you have frozen on our screens. We may have to start over. Has he hit his mute? No, he's not. He's frozen, so I don't know if he's able to hear us, but Karen may have to call him. Yeah, I can give him a call. It looks like he jumped off. He's probably going to try to rejoin. Okay. Judge Matheson, when he gets back on, would you like me to restart it at 15? Yes, please. Okay. Okay, there he is. All right, I disappeared. You may have been wondering why we hadn't asked you a question. Right. All right, we're going to start your time over, Mr. Hansmeier, and it looks like we're functional now, so why don't you go ahead and proceed? Okay, sorry about that. Judge Matheson, it may have pleased the court. Fourth Amendment's text is plain. A warrant must particularly describe the items to be seized, but the warrant in this case obviously did not do that. It included a broad catch-all phrase authorizing officers to search and seize any item identified as being involved in crime. Although this broad language is inconsistent with the Fourth Amendment's text, it can still pass constitutional muster under one condition, that the warrant identify the specific crime under investigation. When the warrant does that, this court holds that the insufficiently particular language is particular enough because it is limited to the specific crime under investigation. So the response to the question here is simple. Did the warrant specify the crime under investigation? The answer is well, it did not. The warrant doesn't mention any crime at all, let alone the specific crime under investigation. The warrant was no better than the general warrants abhorred by the Founding Fathers. Its plain terms authorized a general search of Mr. Suggs' home. In holding otherwise, the district court relied entirely on the Supreme Court's decision in Andreessen v. Maryland, but it misread that decision. According to the district court, the warrant in Andreessen did not identify the specific crime under investigation. That's wrong. It did. And we know it did because the Supreme Court included the language from the warrant in the opinion. And that language clearly shows that the warrant included the specific crime under investigation immediately before the broad catch-all phrase. So the district court's analysis is just flawed. And had the district... Mr. Hansmeier, could I just ask you if we were permitted to consider the affidavit, would the affidavit save the warrant? If... Obviously, we don't think you can consider it, but if you could consider it, we don't think it saves the warrant. No, because although it talks about the crime, the specific crime, it also says that Mr. Suggs was a suspect in seven other crimes. And so the language, any item identified as being involved in crime, I mean, it's not limited to this specific crime under investigation. I'm sorry, Judge Matheson, go ahead. Oh, just a quick follow-up. You said we shouldn't be able to consider the affidavit, but why... As I understand it, the judge actually signed the affidavit. Why isn't that a substitute for an explicit cross-reference between the affidavit and the search warrant? Well, this court has never held that. And the precedent... I don't know that I've seen any court face that situation though. So why wouldn't that be a reasonable thing to do? Well, the government hasn't made that argument. And when you look at the precedent, this court considers that factor in the good faith analysis, which I think necessarily means that this court does not consider that factor in the incorporation analysis. Because in these other cases, I can tell you... So the warrant was signed in... Let's see here. I have it written down, but I can't find it. I think Mink, Otero, number of cases, number of cases where the warrants were signed and this court held that the warrants were still... The good faith exception didn't even apply. So I guess my basic point is that this court's precedent is clear that the signature on the affidavit does not go to incorporation. It goes to good faith. And I don't think you could read them any other way. So are you arguing that the affidavit clearly was not attached at the time that the warrant was in one or the other works? So, you know, the attachment claim maybe is our weakest claim because of the district court's findings on that. I mean, we've still made the argument because at the end of the day, the government actually conceded below in a filing that it wasn't attached. In their concession, that's where the district court comes back. And he understood in the explanation for the concession was that it wasn't attached because the officer had taken it with him. And as far as I could remember, isn't that correct? I remember reading that in the district court's order that he filed in this matter. I mean, my understanding is the district court just essentially relied on the officer's testimony that he generally brought it to the residents. So, I mean, I don't know if that's enough. I will tell you when you look at the face of the warrant, the language says a copy of this warrant is to be with a list of any of the items seized at the time of the execution. So, the warrant itself doesn't even tell the officers to leave the application. I mean, I really don't think he had the attack. I don't think he had it at the scene. Now, whether I can convince you that the district court erred in making that finding, I don't know. But with respect to that issue in light of the language in the warrant and his testimony and the government's concession, it just does not seem like the warrant was attached or that the judge even required it to be attached. Let me pursue that a little bit further too, because I noticed that the argument is that good faith wouldn't say, if we buy the good faith argument, you're saying that that the warrant itself, if we determine that the district court erred there, that it wasn't a part of it, do we then go to the analysis of the good faith argument in regards to under Leon? Right, yeah. So, if you agree with us that it was in particular and yes, then good faith is squarely an issue. Okay, thank you. I mean, I can address that. If somebody doesn't want me to go elsewhere, I think what I want to say on good faith, and I think this is important, I feel like the parties are sort of talking over each other. We have cases, the government has cases, and the cases aren't, they don't really mesh well. There seem to be some inconsistencies. So, I just want to point out the five cases that we rely on and they're Leary, Mink, Cassidy, Dunn, and Groh. And the importance of those cases is that they involve searches of the home. Well, Leary was a business, but I mean, it's essentially the same concept. It's the search of a place and the warrants and the language authorized because of these broad catch-all phrases, authorized the search of everything. Now, the government comes back with a series of cases, Otero, Riccardi, Russian. When you look at those cases, they're not searches of the home. Russian involved searches of cell phones. And in that case, the warrant actually said you can search cell phones. When you look at Riccardi, it's a search of a computer, not the home. And in Otero, Otero is really interesting to me because it's also a that portion of the warrant was specific. And I'm not even sure Otero was decided correctly on particular grounds. And I think Judge Baldock, you concurred on this point, basically saying. All right. We have a frozen screen again. Let me note that we're at 6.50 of the timer. And Karen, we'll need to recontact Mr. Hansmeier. One moment, Judge. So, so, okay. He just rejoined. Sorry. Counselor, you were referring to Otero, weren't you? Yeah. We stopped the clock, so you'll get your full time. Okay. Sorry about this. I don't know what's going on. So, Otero, what I wanted to say about that was it's not clear to me that the warrant in Otero was even in particular, and I wanted to you concurred on this ground, and I think you might have been right because Otero included non-computer search related items and computer search related items, and the non-computer related items were specific. That part of the warrant included the specific crime under investigation and the transactions they were looking for. So, there's a case that preceded Otero, Brooks, that involved a similar warrant. It was a child pornography warrant where this one portion of the warrant talks about child pornography, the other doesn't, but that's okay. That's all that's necessary. So, Otero probably wasn't an in particular warrant, but at the end of the day, it wasn't a general warrant like the one we have here. So, with respect to good faith, my ultimate point is that we have a line of precedent involving general search warrants with language like ours where this court refuses to apply the good faith exception, and those are much more on point than the cases relied on by the government. Mr. Hansmeier, on the good faith issue, there was only brief reference to it by the district court, and that was with respect to Officer Tomczyk. In so far as how the analysis on good faith should proceed, does it need to go on an officer-by-officer basis, and where does Officer Tomczyk and Officer Mentor and the others fit in terms of how that should be done? That's a good question. I don't think you even need to get to an officer-by-officer comparison in light of the general rule that is this court, you know, in the cases I've talked about, this court has been very clear, and the Supreme Court has been very clear. A warrant that is plainly, in particular, on its face is unconstitutional, and that's the ballgame, but if for some reason you don't apply that rule and you want to look to each officer, I mean, the problem the government has is that these officers, one testified she didn't even read the warrant. She didn't have the warrant. She didn't look at the warrant, and this court in clear that the good faith exception does not apply when an officer doesn't even look at the warrant or the affidavit. I'm sorry, Mr. Hansmeier, that makes me think of another question I had, which is, should we be maybe remanding this if we reach the good faith exception? We don't have a determination from the district court here. As I recall, the district court did make, one footnote about the one officer, Tomsic. He said he wasn't going to decide good faith, but then we have this one stray comment, and doesn't this involve some possibly disputed fact questions that we would need the district court to resolve before we could, or it might be helpful to have the district court consider? Yeah, I don't know that I thought about that, Judge Moore. Maybe that would be more prudent. I still think that. Well, you were referring to different various facts that made me think it really is going to require somewhat of a review of the facts, and nobody's done that yet. Yeah, fair enough. I think my only response to that maybe is that the facts I don't think are undisputed or disputed. I feel like everyone knows what happened. I mean, the bottom line is that the government didn't call, you know, with respect to Officer Lloyd, the government just didn't bother to call him as a witness. So I don't know how you can even say that he looked at the warrant, he looked at the affidavit. The government could prove that if it was true. They didn't even try. And so I think when you look at good faith, at the end of the day, you need officers who in good faith relied on the warrant and the affidavit. And you don't have that in a case where the government did not introduce evidence of the officers doing just that. And with that, I think I would reserve the remainder of my time. Mr. Hansmeier, could I just ask you, though, about the severance issue, which was fully briefed in district court, involves a question of law. Why shouldn't this court address that issue? Or if you think we shouldn't, why not remand on that question? I mean, I think remand on severability makes more sense than good faith, I guess, because I mean, the law on severability is not fully developed, in my opinion. It's just less clear than these other areas. And so I think a district opinion would maybe be helpful there to know. So, you know, and we put that in our reply brief. But if you wanted to address it, at the end of the day, I think, you know, our basic point is the same across all of these issues, is that this is a general warrant. And Cassidy makes very clear that a general warrant cannot be severed. And with that, I'll reserve the remainder of time. Thank you. Thank you, Mr. Schock. May it please the court, Carl Schock, representing the United States. I hate to interrupt your time, but clearly in reading the warrant and the affidavit, I don't see where a specific crime has been identified anywhere. And so the question for me, for you is, can you point me to where that has been identified? And if not, what saves it? Two responses to that. First of all, I'd refer the court to the opinion in Sells. And Sells was a case that was focused on severability. But as part of that, it found a what might be called a catch all provision as valid. That provision also did not identify the crime. It said any other related evidence of the crime. The court held that that provision, quote, took on the characteristics of the other firearm related provisions of the warrant. So the warrant in that case, like this one, listed firearms, listed ammunition, and then it said any other related evidence of the crime. And the court held that that could take on the characteristics. So I think the first response is that the court can look to the other provisions of the warrant and see that this was clearly focused on the vehicle shooting. Firearms and vehicles were what it issued. What's at issue? Are you are you agreeing that then that there is no statement of a crime or an offense specifically in this warrant? On the face of the warrant, no, it does not identify a crime. I think the second place that I would argue that the court can look is, of course, the affidavit. And I think that that what this court's case law says is that when there is a disputed term or an ambiguous term, this court can look to the affidavit to explain the meaning of that term, not to cure a lack of particularity, as was the situation in Gros, but rather to explain what that term means and with that interpretation to be able to then interpret the warrant with that proper interpretation. And I think... Doesn't that beg the question whether we are allowed to look at the affidavit when it is not expressly incorporated by the warrant? Yes, I think that it does turn on that question, whether you can look at the affidavit. I think that Ortega Jimenez says that this court can. I think that Simpson says that this court can. And I think this court's Brakeman opinion, which is not cited in the briefs, but it's 475F3-1206, also looks to the knowledge of the executing officer in order to cure an ambiguity in the warrant. I think all of those are situations where the warrant's terms leave some ambiguity as to what it means. And in those situations where there are two interpretations of the warrant, one of which would make the search valid, one of which would make the search invalid, Ortega Jimenez and those other cases says that this court can then look to the affidavit to clarify what is meant by that term. And I think this is... You mentioned Ortega Jimenez. What were the facts there, though? It didn't even involve a particularity issue, did it? It didn't involve particularity, but it was similar in the sense that there was a term that the parties disputed what it meant. And if the defendant was right about what it meant, then the search was invalid. If the government was right what it meant, then the search was valid. And so the court looked to it to look at that point. I also think Simpson was a little bit closer to a particularity challenge. It still wasn't exactly the same kind of argument here, but Simpson was one where the warrant didn't describe the search of property at all. It described the search of a person, and the court looked to the affidavit to see, no, this is really about a search of property. And so the point I want to get at here is that this case boils down to what that term means, and importantly, on the good faith point, whether the executing officers and district court's interpretation of that term was objectively unreasonable. Because the parties here essentially agree on the laws of particularity. If this provision at issue did, in fact, authorize a search for any evidence of any crime, then as in Cassidy, it would be invalid. But if the provision authorizes search for evidence of a particular crime, then as in several of this court's cases, including some of the ones that the defense offered, but also I'd refer the court to Christie, then the provision would be valid. And both Officer Mentor and the district court understood it that second way. And, of course, the government's view is that that's the most reasonable interpretation. But at a minimum, it's not so unreasonable that any reasonable officer would have understood that it meant something else and was, in fact, the general warrant that the defendant's now arguing. And so I would like to return to that good faith argument. Because under, and I specifically point to Otero, Riccardi, and Christie, as cases on this good faith exception. Counsel, as we move into this good faith discussion, I want to make sure that I understand how you're viewing the record relative to Officer Tomczyk. Would you agree that the evidence showed that she didn't have a copy of the warrant when she was at the house, and she hadn't reviewed the entire warrant or the affidavit, and that Officer Mentor wasn't there when they entered the home and when she, when the SWAT team entered the home and when she looked inside the SUV in the parking garage? I think the facts as you just described them are correct. But I think the point I want to make here is that although Officer Tomczyk was clearly there under the authority of the search warrant, she wasn't there to search. So there wasn't a reason for her to go and look at the details of what the warrant authorized a search for because she wasn't there to search. Well, do you think that when she looked in the rear view window of the SUV that she conducted a search? She wasn't searching for evidence, and that was, I think, in a report. I'm not sure where it came from, but what she was doing is she was looking for people. They were there because they believed it to be a highly dangerous situation, and she was there to make sure that the officers who were coming to execute the search were going to be safe. So even though she was on the curtilage and she looks inside and she sees the firearm evidence, are you contending that that was not a search? No, but what I'm saying is that she was there assisting Officer Mentor in executing the search, and she wasn't there to search for particular evidence. Yes, as part of people and clearing the property, she looked in the home. That would be a search. I'm just simply explaining why there wasn't a reason for her to look at the warrant and understand the warrant. She was there for a different purpose, and Officer Mentor and the people assisting him were the ones who came later to actually execute the search. Counsel, let me pursue that a little bit further with you. Are you saying that because she didn't go in the home that there wasn't a search, but by merely looking into the SUV that that wasn't a search because she was looking for people? But what she sees, you can't erase out of your mind, so what she sees constitutes a search. Isn't that right? Yes, I'm not suggesting that going into somebody's home and going and looking in that vehicle on the property is not a search. That is a search. It was a search done pursuant to the search warrant. All I'm saying is that her failure to look at that search warrant doesn't suggest any lack of good faith because she wasn't there to search for things. The people who are going to search for things came later, and she was there to make sure the property was safe before they did that. But doesn't she report what she saw in the SUV? She does report what they saw. I think that the officers were immediately on her heels to conduct the search and certainly would have looked in that vehicle, and so I think that there is certainly inevitable discovery and independent source type arguments there. But again, I think on the good faith exception, I don't think that we are looking at her review of the warrant or what she understood the warrant to mean because the people who are executing the search came later. Is there any authority to suggest that someone who is there to do a sweep of the outside area of the vehicle, as you say, and do a protective sweep, but it's pursuant to the search warrant, that once we find that warrant invalid, that you can say, well, she didn't have to look at the warrant even though she was only there because of the warrant, because she was just doing a protective sweep. She had no obligation to review the warrant to make sure the protective sweep she was doing was justified? I don't have specific authority on that point. I haven't seen any. Right. And the best that I have, although admittedly are not on point, are the cases I cited talking about the seizure of a home before a warrant is before officers go and get a warrant. And in those situations, officers can seize a home to protect evidence until a warrant is gotten. If officers see something on the property during that time, the subsequent warrant can cure that. Could you address the cases that defense counsel relies on here, Mink, Cassidy, and Brown, as far as they pertain to the good faith exception? Because they're much more on point than the cases you've cited. So, yes. And I'll address that. And then I want to disagree with your second point there, that my cases are more off point. The point I want to make is that those And so, in those cases, they don't say anything about the interpretation of a warrant. There was no question in those cases that the warrant was a general warrant. The difference in this case, and in the cases that I cited of Christie and Otero in particular, is that there is a reasonable interpretation of this warrant that would make it valid. And in Christie, the court said that the question is whether a reasonable officer could have read the provision as properly limited to evidence of a particular crime. That's also what the court said in Otero. Even though the court found the provision to be invalid, it upheld it because the court said one could see how a reasonable officer could have interpreted the provision in a more narrow way. And so, that's the situation we have here. In those cases, Mink and Cassidy, there was no other reasonable alternative interpretation. And so, there was no way for the officers to interpret it as anything other than a general warrant. And in fact, in Cassidy- And so, this relies, let me make sure. So, this relies on your argument, and we have to bite off on your argument that because that attachment B referred to firearms and sales of firearms and that sort of thing, it could somehow assume that the crime, what the crime was? It depends on- Inferred? Yes. It depends on this court agreeing that it is a reasonable interpretation. Right. And if we disagree with that interpretation, do you have any other grounds on the good faith exception? I think the court can disagree with the interpretation as long as it thinks that interpretation is reasonable. Okay. If this court thinks that my interpretation and the district court's interpretation is objectively unreasonable, then I don't think I have a good faith argument. I think my good faith argument depends on the fact that a reasonable officer could look at this warrant and read it the way the district court did, as limited to a particular crime under investigation. But what particular crime do you think it was limited to? I think it was limited. That particular provision was about evidence of the shooting that was under investigation. But we don't know that without attachment A, right? Right. And that's why we're looking to, again, whether the officer could reasonably understand it the way that the district court did. I think that if we look at the affidavit, it defines one particular crime, although it lists the others, it's clearly focused on the shooting. And I think one other point in Otero is that Otero found it significant that the officer in that case, quote, attempted to draft a warrant that was limited to a particular crime, and that one could see how a reasonable officer could interpret it that way. I think that we have those on the severability point. And I want to make the point here that although Cassidy suggests that somehow if there's a catch-all provision, that's the end of the severability analysis. That's not the way that this court had applied it in the past. In fact, this court's severability doctrine actually arose out of a situation where there were overbroad catch-all provisions. So some of the first cases were Brown and Noggle. Both of those, there was an severed when the other provisions of the warrant are sufficiently particular. That's what we have here. 12 of the 13 phrases are sufficiently particular. The district court found that, by the way, although the defendant suggests the district court did not address that, it did. And I think that when we have 12 that are sufficiently particular, the inclusion of this single provision at the end shouldn't unvalidate what would otherwise be a lawful search. And I think that the common sense reading of the warrant would suggest to a reasonable officer that firearm and ammunition were the main subject of this warrant. Thank you, counsel. If there are no further questions, we'll move back to Mr. Hansmeier for his rebuttal time. Thank you. Thanks, Judge. I'd love to make five points. I don't know that I'm going to get them all out. So let me just, I want to start with Sells on pages 23 and 27 of our brief. We explained the distinction between that case and our warrant. The warrant issue in Sells included the word related, and that's why relate what held that catch-all phrase related to the other parts of the warrant. Our warrant doesn't include that. Our catch-all phrase falls under a miscellaneous section. Miscellaneous is different, not related. Second point, Ortega-Jimenez. I think this is important. This case, the government's reading this case is a government-friendly. The standard in Ortega-Jimenez is defendant-friendly. The rule applies only when, only to clarify that, this is a quote, clarify the meaning of a term in a facially valid warrant. The point of Ortega is that if you have a facially valid warrant and a search falls within that facially valid warrant, the government can still lose. In that case, it was a weird situation where the government actually brought the item to the search. The defendant says you can't do that. This court said it's fine. It's within the warrant's plain terms. At the end of the day, Ortega is not a government-friendly case. It is a defendant-friendly case, and this court has never applied it in the particularity context. I'm out of time. Thank you. Thank you, counsel. The case will be submitted. Counselor, excuse. Thank you for your arguments this morning.